E-FILED
Monday, 27 March, 2023  02:54:21 PM
Clerk, U.S. District Court, ILCD

United States District Court             Civil Rights
Central District of Illinois             Complaint

| | | |
|---|---|---|
| KEVIN JOHN KEELER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | 23-cv-4048          ) |
| | ) | |
| V. | ) | |
| | ) | |
| LAW OFFICE OF THE COOK COUNTY PUBLIC DEFENDER | ) | |
| NADER ZUGAYER | ) | |
| KATHALEEN LANAHAN | ) | |
| MARIA MUNOZ | ) | |
| SHARONE MITCHELL, JR | ) | |
| OFFICE OF PRESIDING JUDGE | ) | |
| KERRY KENNEDY | ) | |
| UNIDENTIFIED PRESIDING JUDGE STAFF | ) | |
| TIMOTHY EVANS | ) | |
| ANGELA | ) | |
| | ) | |
| Defendants | ) | |

## **COMPLAINT AND REQUEST FOR INJUNCTION**

NOW COMES the Plaintiff, KEVIN KEELER, pro se, and complains of the Defendants,  by personal information as to his own activities and upon information and belief as to the activities of others and all other matters, and states as follows:

## **NATURE OF ACTION**

1.      This is a claim for violation of plaintiff's civil rights as protected by the constitution and laws of the United States under 42 U.S.C. p. 1983, 1985, and 1986 and 18 U.S.C. § 242.

2.      The court has jurisdiction under 28 U.S.C at 1343 and 1367.

3.      Plaintiff's full name is Kevin John Keeler.

**PARTIES**

4.      Kevin Keeler is a citizen of the United States and a resident of Galesburg, Illinois.

5.      "The Law Office of the Cook County Public Defender is one of the largest unified public defender offices in the nation with more than 650 employees, a budget of approximately $85 million, and 23 divisions and units. The Office provides legal services for people who cannot afford to hire an attorney to represent them in misdemeanor, felony, traffic, domestic violence, juvenile delinquency, child protection, and similar cases and appeals. **The Cook County Public Defender's mission is to protect the fundamental rights, liberties and dignity of each person whose case has been entrusted to us by providing the finest legal representation.** Our attorneys are held to high ethical standards by both the Office of the Public Defender and the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois".  (cookcountypublicdefender.org) Emphasis added.

6.      Nader Zugayer, Angela Kilpatrick, and Julie Willis are assistant public defenders for the fifth district of the circuit court of Illinois located at the Bridgeview courthouse at 10220 S. 76th Ave. in Bridgeview, Illinois.

7.       Kathaleen Lanahan is a Circuit Judge in the municipal department at district 5 Bridgeview courthouse at 10220 S. 76th Ave. in Bridgeview, Illinois.

8.      Maria Munoz is an assistant public defender employed at the first district at 69 W Washington St. 17th Floor Chicago, IL.

9.      Sharone R. Mitchell, Jr., "is a passionate advocate for the rights of everyone represented by the Public Defender's office and for reform to increase justice in the legal system and to keep communities safe. He was nominated by Cook County Board President Toni Preckwinkle, confirmed by a unanimous vote of the Cook County Boafor a six-year term as Public Defender, and was sworn into office on April 1, 2021." (cookcountypublicdefender.org)

10.     The office of the presiding judge is the office located at district 5 Bridgeview courthouse at 10220 S. 76th Ave. in Bridgeview, Illinois.

11.     Unidentified staff at presiding judge's office is the female staff employed at the fifth district courthouse at 10220 S. 76th Ave. in Bridgeview, Illinois who answers the phone and refuses to identify herself.

12.     Kerry M. Kennedy is the presiding judge employed at the fifth district courthouse at 10220 S. 76th Ave. in Bridgeview, Illinois.

13.     Timothy C. Evans serves as the Chief Judge of the Circuit Court of Cook County, the largest of the 24 judicial circuits in Illinois and also one of the largest unified court systems in the world:

> More than 1 million cases are filed annually in the Circuit Court of Cook County, which serves Cook County's 5.1 million residents. Chief Judge Evans oversees the circuit's approximately 400 judges whom he assigns throughout the court's ten divisions and six geographic districts. He also oversees an annual budget of approximately $240.1 million and approximately 2,958 employees who work in 15 non-judicial offices providing probation and other court-related services.
>
> Chief Judge Evans was first elected Chief Judge in September 2001 by unanimous vote of the circuit judges. He was re-elected to a second term in September 2004, a third in September 2007, a fourth term in 2010, and a fifth term in 2013. Only the fourth person to serve as Chief Judge of the Circuit Court of Cook County, he also is the first African American to serve in the position.
>
> As Chief Judge, Evans has brought sweeping reforms to the court that are both innovative and compassionate. His efforts include critical changes to pretrial services operations, a new Domestic Violence Courthouse, and the creation of the two court-wide divisions dedicated to hearing only domestic violence matters and elder law matters He also has significantly expanded the use of specialty/treatment courts dedicated to mental health treatment, veterans support, drug treatment, and support to persons charged with prostitution.
>
> Under his leadership, there has been an unparalleled growth in free legal services for low-income, self-represented litigants, including a free mediation program to help homeowners facing foreclosure. Also, the court's national reputation for its highly effective alternatives to incarceration for young people in trouble continues to grow. Cookcountyil.gov.

14.     Angela is one of the people who answers the phone for Timothy Evans.

## LAW

15.     Civil Rights has been defined as:

> "Any of the individual rights of personal liberty guaranteed by the Bill of Rights and by the 13th, 14th, 15th, and 19th Amendments, as well as by legislation such as the Voting Rights Act. Civil rights include esp. the right to vote, the right of due process, and the right of equal protection under the law."
> Black's Law Dictionary (10th ed. 2014)

16.     "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the to the deprivation of any rights, privileges, or immunities

3

secured by the Constitution and laws, shall be liable to the party injured in an action at law suit in equity, or other proper proceeding for redress." 42 U.S.C. p. 1983;

> I do not think that all judges, under all circumstances, no matter how outrageous their conduct, are immune from suit under 17 Stat. 13, 42 U.S.C. § 1983. The Court's ruling is not justified by the admitted need for a vigorous and independent judiciary, is not commanded by the common law doctrine of judicial immunity, and does not follow inexorably from our prior decisions.
>
> The statute, which came on the books as § 1 of the Ku Klux Klan Act of April 20, 1871, 17 Stat. 13, provides that "every person" who, under color of state law or custom, "subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
>
> To most, "every person" would mean every person, not every person except judges. Despite the plain import of those words, the Court decided in *Tenney v. Brandhove,* 341 U. S. 367, that state legislators are immune from suit as long as the deprivation of civil rights which they caused a person occurred while the legislators "were acting in a field where legislators traditionally have power to act." *Id.* at 341 U. S. 379. I dissented from the creation of that judicial exception, as I do from the creation of the present one. Polk County v. Dodson, 454 U.S. 312 (1981). JUSTICE BLACKMUN, dissenting.

17.     Even those officials afforded absolute immunity from civil damages under § 1983 are susceptible to prosecution under § 242 for the willful violation of civil rights. See Imbler v. Pachtman, 424 U. S. 409, 424 U. S. 429 (1976). The Court has consistently held that the two provisions incorporate the same "under color of state law" requirement. See, e.g., Adickes v. S. H. Kress & Co., 398 U. S. 144, 398 U. S. 152, n. 7 (1970); United States v. Price, 383 U.S. at 383 U. S. 794, n. 7.

18.     42 U.S.C. § 1986 provides that every person who has knowledge that a wrongful act is about to be committed and having the power to prevent the commission of such wrongful act or refuses so to do, is liable to the party injured for all damages caused by the wrongful act.  The defendant in a § 1986 action need not have participated in the conspiracy or the commission of the act.  The defendant, however, must have had actual knowledge of the conspiracy.  Mere negligence to act on the part of the defendant will be sufficient to attach liability under § 1986.

19.     **Whoever**, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily

4

injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death. 18 U.S. Code § 242 - Deprivation of rights under color of law. Emphasis added.

20.     Public defenders act under color of state law because "Public defenders receive their power not because they are selected by their clients, but because they are employed by the County to represent a certain class of clients, who likely have little or no choice in selecting the lawyer who will defend them." The Court of Appeals for the Eighth Circuit. 628 F.2d 1106 (1980)
in Parratt v. Taylor, 451 U. S. 527 (1981), the Court noted that defendant prison officials unquestionably satisfied the "under color of state law" requirement because they "were, after all, state employees in positions of considerable authority." Id. at 451 U. S. 535-536.

21.     If two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights. Emphasis added.

22.     The statutory words "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" do not exclude acts of an official or policeman who can show no authority under state law, custom or usage to do what he did, or even who violated the state constitution and laws. Monroe v. Pape, 365 U.S. 167 (1961)

23.     The common law absolute immunity of judges applies only for acts committed within their jurisdiction. *Tenney v. Brandhove,* 341 U. S. 367

24.      One of the purposes of this legislation *(42 U.S.C. p. 1983)* was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance, or otherwise, state laws might not be enforced and the claims of citizens

to the enjoyment of rights, privileges and immunities guaranteed by the Fourteenth Amendment might be denied by state agencies. Monroe v. Pape, 365 U.S. 167 (1961)

25.     "Although the legislation was enacted because of the conditions that existed in the South at that time, it is cast in general language, and is as applicable to Illinois as it is to the States whose names were mentioned over and again in the debates. It is no answer that the State has a law which, if enforced, would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence, the fact that Illinois, by its constitution and laws, outlaws unreasonable searches and seizures is no barrier to the present suit in the federal court."  Monroe v. Pape :: 365 U.S. 167 (1961)P.183

26.     Misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action taken "under color of" state law within the meaning of § 1979. United States v. Classic, 313 U. S. 299; Screws v. United States, 325 U. S. 91. Pp. 365 U. S. 183-187.

27.     In Parratt v. Taylor, 451 U. S. 527 (1981), the Court noted that defendant prison officials unquestionably satisfied the "under color of state law" requirement because they "were, after all, state employees in positions of considerable authority." Id. at 451 U. S. 535-536. As in Taylor, the county employee sued in this action presumptively acts under color of state law. See also Flagg Bros., Inc. v. Brooks, 436 U. S. 149, 436 U. S. 157, n. 5 (1978).

28.     Since § 1979 does not contain the word "willfully," as does 18 U.S.C. § 242, and § 1979 imposes civil liability, rather than criminal sanctions, actions under § 1979 can dispense with the requirement of showing a "specific intent to deprive a person of a federal right."  Monroe v. Pape :: 365 U.S. 167 (1961)

29.     It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies. . . ." (in the earlier congressional debates, as quoted by my Brothers DOUGLAS and FRANKFURTER)

30.     In Senak, the Court of Appeals held that a public defender's demand for compensation from a client was made "ostensibly by virtue of [the attorney's] appointment backed by the power of the state,'" and that his official position "gave

him the opportunity to make the demands and clothed him with the authority of the state in so doing." 477 F.2d at 308. Similarly, in this case, Mr. Zugayer's authority to demand that Plaintiff go to trial without reviewing discovery or filing a pretrial motion was derived from his appointment and backed by the power of the state. His official position gave him the opportunity to act so as to violate Plaintiff's constitutional rights.

31.     Public defenders should be afforded only qualified immunity. Absolute immunity has been extended only to those in positions that have a common law history of immunity. See, e.g., Pierson v. Ray, 386 U. S. 547, 386 U. S. 554-555 (1967). Moreover, public defenders' jobs do not subject them to conflicting responsibilities to a number of constituencies, so that absolute immunity is necessary to ensure principled decision making; in fact, the threat of § 1983 claims by dissatisfied clients may provide additional incentive for competent performance of a public defender's duties. See Ferri v. Ackerman, 444 U. S. 193, 444 U. S. 203-204 (1979).

32.      A public defender does not act "under color of state law" **when performing a lawyer's traditional functions** as counsel to an indigent defendant in a state criminal proceeding. Polk County v. Dodson Pp. 454 U. S. 317-325.

## BACKGROUND

33.     On or around August 15, 2021 Plaintiff was in his vehicle in a parking lot on private property in Palos Hills, Illinois.

33.     At that time, Plaintiff was approached by two Palos Hills police officers and ordered to get out of his vehicle.

Officer 1 requested Plaintiff's driver's license and registration and proof of insurance.

34.     Plaintiff provided his driver's license and registration.

Plaintiff was insured by Liberty Mutual at the time and did not provide an insurance card.

35.     Plaintiff was polite and cooperative with police officers.

36.     Plaintiff complied with all orders made by officers.

37.     Plaintiff answered all questions made by officers.

38.     Plaintiff did not resist in any way when he was searched and placed in handcuffs and placed in a police car.

39.     Plaintiff did not consent to a search of his vehicle.

40.     Plaintiff did not complain or interfere with the search of his vehicle.

41.     Officers did not remove anything from the passenger compartment of Plaintiff's vehicle.

42.     Police confiscated something from the cargo area of Plaintiff's vehicle and did not show Plaintiff what it was.

43.     Plaintiff did not slur his speech.

44.     Plaintiff did not stagger or sway in any manner.

45.     Plaintiff stood in a normal manner and did not lean on his vehicle.

46.     Plaintiff did not say or do anything that indicated intoxication by any substance or alcohol.

47.     Officers did not articulate a suspicion that a crime had been or was being or was about to be committed.

48.     There was no evidence that a crime had been committed.

49.     Plaintiff was on private property when he was approached and searched and seized by police officers.

50.     Plaintiff was held for questioning for approximately one hour and then released from custody with a court date to appear at the Bridgeview courthouse under threat of incarceration for failure to appear.

51.     Plaintiff appeared on that date and requested to be represented by a public defender.

52.     The judge assigned Veronica Saheen as Plaintiff's public defender.

53.     Plaintiff met with Ms. Saheen on or around February 15, 2022 at the Bridgeview Courthouse after appearing in court several times under threat of arrest for failure to appear. No charges had been filed and there was no case number.

54.     At that time, Ms. Saheen and Plaintiff had not seen any discovery and during a meeting in a conference room at public defenders offices Ms. Saheen advised Plaintiff not to demand a jury trial because of the open container charge.

55.     Ms. Saheen advised Plaintiff that he had a fair chance of winning at a bench trial.

56.     Plaintiff informed Ms. Saheen that a charge for open container with alcohol only applies to public highways and that he was on private property at the time in question.

8

57. Plaintiff pointed out that the search of his vehicle was predicated on the charge of open container.

58. Plaintiff stated that therefore there was no probable cause to search his vehicle.

59. Plaintiff pointed out that it was thereby an unlawful search.

Plaintiff informed Ms. Saheen that therefore a pretrial motion seemed better than a trial.

60. Ms. Saheen failed to respond in any meaningful way to any of the above.

61. Ms. Saheen stated that she was too busy to discuss further and left.

62. Plaintiff has not seen or spoken to Ms. Saheen since that day.

63. On April 14, Plaintiff again appeared on zoom for a court date under threat of arrest for failure to appear.

64. At that time, the judge informed Plaintiff that Ms. Saheen was no longer his attorney.

65. Judge Lanahan informed Plaintiff that his new attorney was Nader Zugayer.

66. Ms. Saheen did not file a motion and notice of withdrawal as per Illinois Supreme Court Rules.

67. Mr. Nader did not file an appearance as per Illinois Supreme Court Rules.

68. At that time, Mr. Zugayer demanded a bench trial on behalf of Plaintiff.

69. Plaintiff stated to Judge Lanahan that he was not ready for trial.

70. Judge Lanahan advised Plaintiff not to worry and Mr. Zugayer would call and explain everything and just because the case was being set for trial didn't mean there would be a trial.

71. Plaintiff again requested Judge Lanahan not to set the case for trial at that time.

72. Judge Lanahan agreed to set the next court date for a status hearing.

73. Judge Lanahan advised Plaintiff in open court that since the case was getting old he must promptly either plead guilty or go to trial.

74.    Later that day the following discussion via email:

"....Also I was taken by surprise when you asked the judge for a trial today. When Veronica asked me if I wanted to go to trial I asked her if I could see the discovery before making that decision. She said yes but I still haven't seen the discovery. It's not her fault I missed the appointment.

Kevin,

I was not upset at all.  I handle my cases differently than Veronica.  It is a DUI charge. If you want a trial, we can go to trial.  If you want to plead guilty, we need the evaluation.  It is up to you.  Let me know.  Regarding discovery, anytime you want to review it, call me and schedule an appointment.  You can come to the office and review the discovery with me.

On the next court date, you may appear on zoom.  If you have your alcohol and drug evaluation completed, we will schedule the case for an in person plea and resolve the case.  If you want a trial, schedule an appointment and come review the discovery and we will set the case for trial and resolve the case. **The reason I set the case for trial today was because the judge indicated today's date was final for a plea of guilty  or a trial. Therefore, I set it for trial.**  One thing I do want to make very clear, as the Attorney, I decide everything that happens except for the following (the below is completely your decision)

1.   If you have a trial or plea
2.   If you want a bench or jury trial
3.   If you testify

Other than the above, I decide everything strategically. Just because I set a case for trial does not mean we are going to trial.  I called you before the Court to explain my strategy, and you did not answer.  **My plan, as the judge told you 5x, was that it was set for trial but that does not mean we have to do the trial.  The Judge and myself even told you that I was going to call you and explain.**  Main point being, I am not required to, nor will I discuss every move I make and why I make it with You.  That is my call.

Again, I was not upset at all,  every attorney is different.  I resolve my cases and do not let them get old. **So with me, it is trial or plea**.  It is completely up to you.  I was simply trying to let you know we are resolving this case soon.  Hope you feel better." Emphasis added.

75.    Since April 14, 2021 Mr. Zugayer and Judge Lanahan have been routinely using manipulation and intimidation to deny Plaintiff's due process rights to have meaningful access to discovery and to file a pretrial motion. "The only way we can resolve this case is with (1) a trial or (2) a plea of guilty.  Which way we do it is your decision."

76.    From August 15, 2021 to April 14, 2022 various judges at courtroom 105 attempted to force Plaintiff into a bench trial without seeing discovery and

10

without any pretrial motions by advising Plaintiff in open court that he must promptly either plead guilty or go to trial since the case was getting old.

77.     During a phone conversation on April 25, 2022 Mr. Zugayer threatened to request the court to find Plaintiff unfit to stand trial.

78.     On October 4, 2022 the defense strategy of a motion to suppress evidence for unlawful search and seizure was agreed on:

> "Kevin,
>
> I will file the motion for you.  I will fight hard for you at motion and we will see how it shakes out.  If not successful, we can regroup and go from there.  I will be in touch.
> Best Regards, Nader"

79.     On or Around December 10, 2023 Plaintiff asked Judge Lanahan in open court what his case number was and she gave him a traffic citation number from the Palos Hills Police Department Y8330539 and then stated that there were two more traffic violations also from the Palos Hills Police Department on her desk.

> "Circuit Court of Cook County GENERAL ORDER NO. 6.2 - Numbering of Actions (a) New Actions- Every action, upon the filing of the complaint or other paper initiating the action or proceeding, shall be numbered in annual series with the number of the action preceded by the last two figures of the current year and by the abbreviation of the Division or District in which the action is filed, and the Record Series where implemented by the Clerk of the Circuit Court, in the following form for a misdemeanor in municipal department at district 5: 15-MC5-123456." GENERAL-ORDER-NO-6-2-Numbering-of-Actions.

80.     The case number that Judge Lanahan and Nader Zugayer and the county clerk gave Plaintiff were not in the form required by GENERAL ORDER NO. 6.2.

81.     Defendants misrepresented a traffic citation number as a criminal case number.

82.     At the last four court appearances, Judge Lanahan has failed to conduct a hearing on anything re any charges pending against Plaintiff. Instead she immediately connected Plaintiff to a conference room via zoom where Mr. Zugayer

showed up and continued to deny Plaintiff's right to a pretrial motion and repeated his attempts to manipulate Plaintiff into a bench trial via intimidation.

83.    On February 28, 2023 Judge Lanahan again failed to hold any hearings on anything connected to Plaintiff, and again placed Plaintiff in a conference room via zoom with Mr. Zugayer.

84.    During that conference Mr. Zugayer used more threatening language to force  Plaintiff to go to trial on the next court date. He did not mention reviewing discovery or any pretrial motions. He stated "I am going to ask you one last time to decide on a bench trial or jury trial". Plaintiff again declined. Mr. Zugayer exited the conference room and Plaintiff was left in that room and waited to be reconnected to the courtroom and was never reconnected. The following day a bench warrant was issued for Plaintiff to be arrested for failure to appear in court on February 28, 2023.

85.    The following day, Plaintiff emailed Mr. Zugayer to ask when his next court date was. Mr. Zugayer responded that a warrant had been issued for Plaintiff's arrest.

86.    Plaintiff asked why. Mr. Zugayer did not respond to that email or the five subsequent emails from Plaintiff or the multiple phone calls to his office.

87.    On Monday, March 13 Plaintiff appeared in Judge Lanahan's courtroom 105 and was disconnected from the general chat and connected to the direct chat with the clerk. Plaintiff requested to ask Judge Lanahan if she had issued a warrant for his arrest and if so what it was for.

88.    The judge refused to inform Plaintiff of the nature of the charges against him and the court clerk refused to say her name and instructed Plaintiff to call his public defender or the clerk's office and ordered Plaintiff to get off the chat.

> "The congressional purpose seems to me to be clear. A condition of lawlessness existed in certain of the States under which people were being denied their civil rights. Congress intended to provide a remedy for the wrongs being perpetrated. And its members were not unaware that certain members of the judiciary were implicated in the state of affairs which the statute was intended to rectify. It was often noted that "[i]mmunity is given to crime, and the records of the public tribunals are searched in vain for any evidence of effective redress." Cong.Globe, 42d Cong., 1st Sess., 374. Mr. Rainey of South Carolina noted that "[T]he courts are in many instances under the control of those who are wholly inimical to the impartial

administration of law and equity." Pierson v. Ray, 386 U.S. 547 (1967) Mr. Justice Douglas, dissenting.

89.     Plaintiff called the public defender's office at Bridgeview courthouse that morning and spoke with Michelle who tried unsuccessfully to get Mr. Zugayer to answer the phone.

90.     Michelle searched for a warrant and confirmed that a warrant had been issued on March 1, 2023.

91.     Plaintiff asked what the warrant was for and Michelle replied that the record did not say what it was for.

92.     Plaintiff asked what the bond amount was and Michelle stated that no bond amount was indicated on the record.

93.     Plaintiff called again that afternoon and another secretary (refused to identify herself) answered and attempted unsuccessfully to get Mr. Zugayer to answer the phone.

94.     Plaintiff called the presiding judge's office on or around March 13, 2023 and inquired as to the nature of the warrant and was connected with Mr. Zugayer's supervisor, Julie Willis, who stated that she would request Mr. Zugayer to respond to his emails.

95.     When Mr. Zugayer still did not respond to emails after two more days, Plaintiff called Ms. Willis again and she stated that the warrant was a bond forfeiture warrant for failure to appear in court on February 28, 2023.

96.     On or around March 14, 2023 Plaintiff called the presiding judge's office again and a woman answered (refused to identify herself) and stated that the presiding judge was out of town and requested that Plaintiff tell her what he called about and Plaintiff indicated that he did not want to discuss that with her since he didn't know who she was and she hung up the phone. Plaintiff called back twice and no answer.

97.     On or around March 20, 2023 Plaintiff called the office of Cook County Public Defender Sharone R. Mitchell, Jr. at 69 W. Washington St., Chicago, IL 60602 and a woman who refused to identify herself answered the phone.

98.     That woman connected him with assistant public defender Maria Munoz.

99.     Plaintiff requested help with illegal warrant and Ms. Munoz told Plaintiff to have a nice day.

100.    Ms. Munoz failed to respond to Plaintiff's follow up email.

101.    On March 21, 2023 Plaintiff called presiding judge Kerry M. Kennedy's office again and an unidentified woman answered and Plaintiff requested assistance re a warrant for failure to appear that was issued after he had appeared in court on February 28, 2023.

102.    Plaintiff was connected to another line which rang 15 times with no answer.

103.    Plaintiff called Ms. Kennedy's office again and no answer and Plaintiff left a voicemail message with details re arrest warrant and again requested help.

104.    Plaintiff realized that he forgot to leave his email address and called back and the unidentified woman answered again and Plaintiff advised her re warrant issued on March 1, 2023 for failure to appear the day after he appeared in court via zoom.

105.    Plaintiff was told to hold one moment and was left on hold and hung up.

On March 23, 2023 Plaintiff called the office of the chief judge of Cook County located at 50 W Washington St .Rm. 2600 in Chicago, Illinois and Angela answered the phone.

106.    Plaintiff  informed Angela re bench warrant.

107.    Angela stated that they don't get involved with that type of thing.

108.    Plaintiff stated that Mr. Evans should have an opportunity to weigh in on this before Plaintiff proceeded any further.

109.    Plaintiff explained more details re the situation and Angela said please wait while she got someone who could help.

110.    Plaintiff was left on hold and needed to hang up since he was on a public library phone.

111.    Plaintiff called back in five or ten minutes and a woman answered who refused to identify herself.

112.    Plaintiff asked to speak to Angela and was transferred to her extension.

113.    Angela did not take Plaintiff's call and it went to voicemail.

Plaintiff left details as per above allegations and left his email address.

114.    Later that day Plaintiff received an email from the office of the chief judge from an unidentified staff.

14

115.    Said email said that someone called the presiding judge's office at Bridgeview courthouse and someone there said that Plaintiff needed to turn himself in to further address the warrant.

116.    Plaintiff responded by email that it was an illegal warrant and there had been multiple violations of Illinois law and due process and civil rights and asked to know who he was speaking to.

117.    No reply to that email so far.

## COUNT I

## VIOLATIONS OF FOURTH AMENDMENT

## OF THE UNITED STATES CONSTITUTION

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. Fourth Amendment.

118.    Defendants violated Plaintiff's fourth amendment rights when police officers  stopped and approached Plaintiff's vehicle and detained and questioned him without articulable suspicion that a crime or traffic violation had been committed.

119.    Defendants violated Plaintiff's fourth amendment rights when police officers searched Plaintiff's vehicle under color of law and seized his property on private property without probable cause or and without consent." Fourth amendment.

120.    Defendants violated Plaintiff's fourth amendment rights under color of law by interfering with Plaintiff's right to be secure in his person and house against unreasonable seizure which could foreseeably result from the warrant issued by Judge Lanahan on March 1, 2023 without probable cause and not supported by Oath or affirmation.

121.    Defendants unlawfully detained and searched and arrested and facilitated the prosecution of Plaintiff in violation of fourth amendment rights under the color of law as per departmental customary practices since in that:

i. First Officer's supervisor was at the station and instructed him with procedure.

ii. The traffic citations required officer to indicate which side of the street Plaintiff's vehicle was on and which direction it was facing.

iii.  First Officer's supervisor instructed him to leave those boxes blank because Plaintiff was in a private parking lot at the time in question.

iv.  First Officer's supervisor and the Cook County Public Defender knew that it is not a violation of Illinois law to have an open container with alcohol in the cargo area of a vehicle on private property.

 v.  The Cook County Public Defender and the Presiding Judge failed to take remedial action when they became aware that a warrant was issued for failure to appear after Plaintiff appeared in court on February 28, 2023 and that there were departmental violations of Illinois state law and civil rights and Illinois Supreme Court Rules and rules of procedure and attorney misconduct and negligence and malicious prosecution.

122.    Kathaleen Lanahan interfered with Plaintiff's right to be secure in his person when she illegally issued a warrant for his arrest under the color of state law.

123.    Ms. Lanahan was not acting within any judicial jurisdiction when she issued that warrant for failure to appear since:

i.  Plaintiff had by then appeared to every court date (over a dozen times) including the one in question (see zoom record) under threat of arrest to answer to traffic violations that nobody else showed up for so Plaintiff never confronted his accusers or witnesses against him and ms. Lanahan never requested anyone else to show up under threat of arrest or otherwise.

ii.  There is no Illinois law that allowed any person to initiate any type of legal action against Plaintiff re said traffic violations which were issued in August of 2021:  "Unless the statute describing the offense provides otherwise, or the period of limitation is extended by Section 3-6, a prosecution for any offense not designated in subsection (a) or (a-5) must be commenced within 3 years after the commission of the offense if it is a felony, or **within one year and 6 months after its commission if it is a misdemeanor**." Illinois Statutes Chapter 720. Criminal Offenses § 5/3-5 (b). Emphasis added.

iii.  Ms. Lanahan had removed Plaintiff from her jurisdiction when she called him to come before the bench which he did and then she set up a meeting with his attorney (not within her jurisdiction

16

either) and directed him to leave the courtroom to attend that meeting which he did and directed her clerk to disconnect Plaintiff from the courtroom which she did.

iv.  Ms. Lanahan's jurisdiction was limited to issuing an ex parte judgement: "If a person ignores the ticket or fails to appear in court on any court date scheduled, the judge will enter an ex parte judgment of conviction and assess a fine against that person in the amount set by the Illinois Supreme Court." (cookcountycourt.org)

124.    Above fourth amendment violations are part of customary practices at the Bridgeview courthouse and in Cook County since the presiding judge and chief judge are aware of them and have no objections or concerns and are not taking any action in opposition and assistant to the chief judge stated official policy that "We dont get involved with that kind of thing".

## COUNT II

## VIOLATIONS OF SIXTH AMENDMENT

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense. Sixth Amendment.

125.    Plaintiff was denied the right to a speedy trial in that he was denied the right to a hearing on a pretrial motion of any kind. Without said hearing, there could be no fair trial.

126.    Defendants interfered with Plaintiff's right to be informed of the nature and cause of the accusations by  demanding that Plaintiff either pleaded guilty or went to trial when no charges were filed.

127.    Defendants interfered with Plaintiff's right to be informed of the cause of the accusations when they failed to allow Plaintiff to have meaningful access to discovery as per customary practice at Bridgeview courthouse.

128.    Defendants interfered with Plaintiff's right to have the Assistance of Counsel for his defense when Plaintiff's counsel testified against him in open court and threatened to have him found incompetent and disregarded his emails and intimidated him and gave him misguided legal advice under the color of law and as per customary practices at Bridgeview courthouse.

129.    Defendants interfered with Plaintiff's right to be confronted with the witnesses against him under the color of law and as per customary practices at Bridgeview courthouse when Ms. Lanahan failed to require any other party to appear at any of the twelve court dates that Plaintiff was required to appear at under threat of arrest.

130.    Defendants interfered with Plaintiff's right to be informed of the nature and cause of the accusations under the color of law and as per customary practices at Bridgeview courthouse when they gave him an invalid case number and failed to present a statement of charges or list of witnesses.

131.    The practice of representing traffic ticket numbers as case numbers for criminal cases must be the policy at the Bridgeview courthouse since the judges, public defenders, and the clerk's office routinely participate.

132.    Above sixth amendment violations were done under the color of law and as per departmental customary practices in that:

i.  In all cases, the charge must be filed with the circuit clerk within a limited period of time after the incident date alleged in the information, indictment or complaint. For a DUI in Illinois that period is eighteen months. 720 ILCS 5/3-5

ii.  The statute of limitations for the state of Illinois to press charges had expired before March 1, 2023 when Judge Lanahan issued a bench warrant for failure to appear to answer to those charges.

iii.  On March 20, 2023 Plaintiff called the clerk's office at the Bridgeview courthouse and requested his case number and was given a ticket number.

iv.  The clerk and public defender and the judges at Bridgeview courthouse routinely work together to convince defendants that they have to either plead guilty or go to trial  to answer to unfiled charges.

## COUNT III

## VIOLATIONS OF EIGHTH AMENDMENT

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Eighth Amendment.

133.    Defendant Judge Lanahan required excessive bail of $500 when she issued her bench warrant under color of law since that is more than half of Plaintiff's monthly net income.

134.    Further, said bail was excessive in that it was not necessary since Plaintiff had already shown up to all of approx twelve court dates including the one that the warrant for failure to appear was issued for.

135.    Said warrant for arrest constitutes cruel and unusual punishment under the color of law since Plaintiff was punished for appearing in court and following the directions of the judge.

136.    Additionally, it was  cruel and unusual punishment to issue a warrant to arrest someone and refuse to tell them why.

137.    Above violations of the eighth amendment were under color of law and as per departmental customary practices in that the Office of the Presiding Judge and Law Office of the Cook County Public Defender have not done anything in opposition although they know about them.

## COUNT IV

## VIOLATIONS OF FOURTEENTH AMENDMENT

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. Fourteenth amendment

138.    Defendants deprived Plaintiff of his liberty when they arrested him without probable cause.

139.    Defendants interfered with Plaintiff's equal protection of the laws when they replaced his attorney as per Bridgeview courthouse administrative policy without telling him and with disregard for Supreme Court Rules re attorney withdrawals and appearances.

140.    Defendants interfered with Plaintiff's constitutional right to equal protection of the laws and due process when Mr. Zugayer followed directions from Ms. Lanahan re defense strategy instead of from his client:

> "My plan, **as the judge told** you 5x, was that it was set for trial but that does not mean we have to do the trial.  **The Judge and myself** even told you that I was going to call you and explain.  Main point being, I am not required to, nor will I discuss every move I make and why I make it with You. That is my call."

141.    Thereby Mr. Zugayer has not been acting in the traditional role of a defense attorney on behalf of Plaintiff:

19

> The legal system posits that a defense lawyer best serves the public not by acting on the State's behalf or in concert with it, but rather by advancing the undivided interests of the client. This is essentially a private function for which state office and authority are not needed. Polk County v. Dodson, Pp. 454 U. S. 317-319. 1981.

142.    Thereby Mr. Zugayer has committed all of the above civil rights violations under the color of state law.

143.    Mr. Zugayer was acting under the color of state law when he interfered with  Plaintiff's constitutional right to equal protection of the laws and due process since he was following direction from Ms. Lanahan who is an employee of the state.

> Held to the same standards of competence and integrity as a private lawyer, see Moore v. United Sates, 432 F.2d 730 (CA3 1970), a public defender works under canons of professional responsibility that mandate his exercise of independent judgment on behalf of the client.

144.    Defendants interfered with Plaintiff's constitutional right to equal protection of the laws and due process when Mr. Zugayer  permitted the state of Illinois to direct and regulate his professional judgement re demanding trial instead of filing a pretrial motion.

> "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services." DR 5-107(B), ABA Code of Professional Responsibility (1976)

145.    Defendants interfered with Plaintiff's equal protection of the laws and due process when Mr. Zugayer demanded a bench trial on behalf of Plaintiff as per administrative policy at Bridgeview courthouse and under the color of state law before the two had ever met or talked on the phone and in disregard of what Plaintiff had talked about with Ms. Saheen who Plaintiff thought was still his attorney.

146.    Mr. Zugayer was not acting in the traditional role of a defense attorney when he demanded a bench trial and refused to file a pretrial motion and failed to allow meaningful access to discovery.

147.    Mr. Zugayer was not acting in the traditional role of a defense attorney when he failed to respond to Plaintiff's emails or take his calls.

148.    Mr. Zugayer was not acting in the traditional role of a defense attorney when he testified against his own client in open court.

149.    Above fourteenth amendment violations were done under the color of state law in that the actors are employees of the state and their actions were directed by the state at all times pertinent.

150.    The above fourteenth amendment violations are indicative of customary departmental practices in that no action has been taken although the department chiefs have been notified.

## COUNT V
## NEGLECT TO PREVENT

151.    Paragraphs 1 thru 41 are incorporated herein.

152.    Defendants know that the above civil rights violation of illegal warrant conspired to be done has been committed, and have power to prevent or aid in preventing the enforcement of the same, and are neglecting or refusing to do so, which Defendants by reasonable diligence could cause the warrant to be canceled.

153.    Defendants knew that the above violations of amendments to the Constitution of the United States of America conspired to be done were about to be committed, and had power to prevent or aid in preventing the commission of the same, and neglected or refused to do so, which Defendants by reasonable diligence could have prevented.

154.    Defendant Nader Zughayer's supervisors and department chiefs knew about his misconduct and facilitated, approved, condoned, or turned a blind eye toward it.

155.`Mr. Zugayer was not acting in the traditional role of a defense attorney when he failed to assist Plaintiff with the warrant.

## DAMAGES

156.    As a direct or proximal result of Defendants' interference with his civil rights, Plaintiff has suffered severe emotional distress including relapse into social anxiety disorder and panic attacks and lost his remaining trust in society and the state judicial system.

157.    Plaintiff is in constant fear of being arrested and incarcerated since he does not have $500 cash or credit and does not currently have access to his debit card to post for bond.

158.    Further, Plaintiff has suffered severe emotional distress since August of 2021 from fear of missing a court date and being arrested. Additionally, Plaintiff has suffered

severe emotional and psychological distress from being manipulated and pressured into going to a bench trial at Bridgeview courthouse.

159.    Said pressure is aggravated by Plaintiff's previous experience in a bench trial at Bridgeview courthouse.

160.    At that bench trial, the judge disregarded the rules of evidence and due process and rules of procedure and concluded the trial without calling Plaintiff's only witness to the stand to testify although she called two witnesses for the prosecution.

161.    Further, that judge did not cite any evidence to support any of her rulings.

162.    Additionally, that judge categorically denied each and every one of Plaintiff's six post trial motions without a meaningful hearing on any of them and without citing any findings in support of her rulings.

163.    At the trial the judge berated and bullied Plaintiff and rudely ordered him to "move on" after sustaining objections to his questions for the witness when nobody had made an objection. Plaintiff was abused and humiliated and shamed by both the judge and counsel for the prosecution.

164.     It was a bloodbath and Plaintiff would have been arrested for contempt if he tried to defend himself in any way.

165.    It was unabated judicial brutality the kind of which Plaintiff had never imagined.

166.    The positive side is that Plaintiff learned that anyone advising him to agree to a bench trial for any charge at Bridgeview courthouse is not advising him in his best interest.

### **IRREPARABLE INJURY**

167.    If Plaintiff is arrested on this warrant, he will not have the cash or credit to post bond and cannot access his debit card at this time.

168.    Plaintiff needs to take three different prescription eye drops for glaucoma.

169.    The eyedrops prevent permanent optic nerve damage, which means permanent vision loss and blindness.

170.    Plaintiff is already permanently blind in his left eye.

171.    Plaintiff was previously arrested in Oak Lawn, Illinois where the police confiscated his eye drops, and incarcerated in Cook County jail.

172.    At Cook County jail Plaintiff told the doctor during intake that he needed eye drops right away since he has to take them twice a day.

173.    The doctor did not get the eyedrops.

174.    For two days Plaintiff asked the officers and sergeants to help him get eye drops and still did not get them.

175.    On the third day prisoners went to the yard and Plaintiff alerted a lieutenant there that he was suffering permanent vision loss without eyedrops and the lieutenant facilitated delivery from the pharmacy that day.

176.    Further, Plaintiff suffers from social anxiety disorder and borderline personality disorder and substance use disorder.

177.    Plaintiff recently relapsed into active substance use disorder and currently has only been clean and sober for thirty days.

178.    Plaintiff is not in an inpatient treatment program and has been recovering thru attending a 12 step program twice a day.

179.    Plaintiff had to miss some meetings in order to have time to research and write this complaint at the library.

180.    Plaintiff is experiencing anxiety since if Plaintiff comes into contact with police for any reason they will ask for his name and birthday and check for warrants and arrest him.

181.    The anxiety makes it harder to avoid relapse into active substance use disorder, which could prove fatal.

182.    Yesterday (March 27, 2023) the Galesburg police were knocking on the door at Plaintiff's residence.

183.    The police requested multiple times to know Plaintiff's name and date of birth.

184.    That is the information required to facilitate an arrest by searching for outstanding warrants.

185.    Plaintiff respectfully requests this Court to issue a preliminary injunction suspending enforcement of the bench warrant in question until such time as the legality thereof is determined by this Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff  accordingly and respectfully requests a jury trial and judgment against Defendants as follows:

1. That Plaintiff be awarded general compensatory damages in an amount to be determined at trial;

2. That Plaintiff be awarded statutory damages in an amount to be determined at trial;

3. That Plaintiff be awarded punitive damages in an amount to be determined at trial;

4. That Plaintiff be awarded attorney's fees and costs in this action; and

5. That Plaintiff be awarded any such other and all relief to which he may be entitled as a matter of law and as deemed appropriate by this Court.

### Certification and Closing Under Federal Rule of Civil Procedure 11

By signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

/s/ Kevin Keeler
pro se Plaintiff
729 E. Losey st. apt. 1
Galesburg, Illinois 61401
(708) 510-7315
kevinjohnkeeler@gmail.com